**Dr. Victor HERBERT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–672 C.

United States Court of Federal Claims.

Nov. 15, 1994.

Michael K. Botts, Prescot, WI, for plaintiff.

Robert G. Hilton, Atty., Washington, D.C., with whom was Asst. Atty. Gen., Frank W. Hunger, for defendant. Thomas J. Byrnes, Dept. of Justice, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge.

This case is before the court on defendant's motion for summary judgment and plaintiff's motion for voluntary dismissal of Counts IV, V, and VI. For the reasons set forth below, the court denies defendant's motion. Pursuant to RCFC 41(a) and upon joint stipulation by the parties, the court grants plaintiff's motion and dismisses the aforementioned counts *with prejudice.*

## FACTS

This case involves a squabble over copyrights to the 10th edition of the *Recommended Dietary Allowances* (10th RDA), a recognized report that recommends dietary intake levels for various nutrients. Since 1941, the National Academy of Sciences (the Academy), a private, non-governmental, non-profit corporation, under contract with the United States Department of Health and Human Services (HHS), has produced various updates to the RDA. In 1980, the Academy entered into a contract with HHS to produce the 10th RDA for $582,815. In turn, the Academy convened a voluntary committee including plaintiff for the purpose of compiling and processing relevant scientific information.

In 1985, the committee submitted its final draft of the 10th RDA to the Academy. However, because of a disagreement over recommended allowances for vitamins A and C, the Academy did not deliver the draft to HHS. Instead, it rejected the draft, dissolved the committee, and reported to HHS its inability to deliver the 10th RDA. Shortly thereafter, plaintiff copyrighted his contributions to the committee draft in his own name, and so notified the committee chair.

By March 1986, the Academy was at risk of being in breach of its contract to prepare

the 10th RDA. HHS presented the Academy with three remedial options: (1) recreate the report from scratch, (2) submit the existing draft with a full explanation of relevant disputes, or (3) terminate the contract and return all funds paid to the Academy to HHS. The Academy chose the second option and submitted the previously rejected draft to the government, despite plaintiff's copyright. Approximately a year later, after approval and edit of the final draft, the National Institutes of Health (NIH), a part of HHS, decided to publish the 10th RDA. Toward that end, NIH entered into a second contract with the Academy to "review, revise, and update" the draft at a cost of $162,745. The Academy completed the task and submitted a final copy to HHS in October 1989. Subsequently, the Academy copyrighted the work in its own name and sold approximately 25,000 copies to the general public, purportedly reaping a significant profit.

Plaintiff filed a complaint against the Academy in the District Court for the District of Columbia in February 1990, alleging the Academy had infringed his copyright of materials he provided under the initial 10th RDA contract. On plaintiff's motion to dismiss, the district court found that the United States government had authorized and consented to any copyright infringement by the Academy, and plaintiff's case thus was not against the Academy but the United States. Because the district court did not have jurisdiction over copyright infringement cases against the United States, it dismissed the case for lack of subject matter jurisdiction.[1] On September 8, 1992, the United States Court of Appeals for the D.C. Circuit affirmed the district court's decision. *Herbert v. National Academy of Sciences,* 974 F.2d 192 (D.C.Cir.1992).

Three weeks later plaintiff filed a complaint against the United States in this court alleging jurisdiction under 28 U.S.C. § 1498(b). However, plaintiff later reversed his course and suggested, in direct contrast

to his complaint, that this court lacks jurisdiction over the claim. In an unreported decision, the court examined its jurisdiction and found no deficiency. The case is now before the court on defendant's motion for summary judgment and upon plaintiff's motion for voluntary dismissal of Counts IV, V, and VI of his complaint.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact [so that] the moving party is entitled to judgment as a matter of law." RCFC 56(c). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States,* 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds,* 923 F.2d 830 (Fed. Cir.1991). When the moving party has carried its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.,* 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley,* 514 F.2d 971, 976 (3d Cir.1975). "[When] the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

---

1. 28 U.S.C. § 1498(b) states:
   whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, ... or any person, firm, or corporation acting for the Government and with the authorization or

   consent of the Government, the exclusive remedy of the owner of such copyright shall be by action against the United States in the Court of Federal Claims....

   28 U.S.C. § 1498(b) (1988).

Defendant proffered four arguments supporting its motion for summary judgment: (1) plaintiff's status as a government employee at the time he copyrighted the 10th RDA divests this court of jurisdiction; (2) the "Rights in Data" clause contained in the contract between the Academy and HHS grants the United States a non-exclusive, royalty-free license to plaintiff's asserted copyright; (3) plaintiff granted defendant an implied license to plaintiff's asserted copyright; and (4) joint owners of plaintiff's copyrights to the 10th RDA granted defendant a license and undivided interest in plaintiff's asserted copyright. The court finds, however, that defendant's arguments are either based on facts in dispute or are not sufficiently developed for the court to reach a firm conclusion. Hence, the court denies defendant's motion.

## I. Jurisdiction

■ Defendant's first argument was based on the jurisdictional limitations contained in 28 U.S.C. § 1498(b), which waives sovereign immunity for copyright infringement actions filed against the United States. The statute bars infringement actions filed by government employees "where the copyrighted work ·was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used...." Plaintiff is a full-time professor of medicine at the Mount Sinai School of Medicine and concurrently holds a full-time position at the Bronx Veterans Administration Medical Center (Bronx V.A.). Because the Bronx V.A. is a entity within the United States government, section 1498(b) applies to plaintiff if he produced sections of the 10th RDA as part of his official functions with the Bronx V.A., or used government time, material, or facilities in producing the 10th RDA. Defendant alleged that Dr. Herbert did both. However, defendant's allegation was not supported by undisputed, concrete facts—in fact, the positions taken by both sides leave this court with an inextricable muddle.

Defendant's brief included a quotation which stated that part of Dr. Herbert's functions at the Bronx V.A. was "to plan and execute a precise research program to generate effective reports and results worthy of publication. Communicates and promotes the broad use of the results of Research and Development." This grammatically incorrect quotation, however, was not in the source that defendant cited, either in substance or form.[2] Complicating matters, plaintiff's response did not attack the accuracy of defendant's assertion, but instead addressed an issue not relevant to this dispute. Plaintiff argued and provided support for the assertion that the Bronx V.A. allowed, and even encouraged, plaintiff to engage in outside professional activities, including those resulting in the receipt of royalties, copyrights, honoraria, monetary, and nonmonetary awards. Although that assertion might be correct, the relevant issue is not whether plaintiff was allowed to copyright works in his own name. Rather, section 1498(b) requires the court to examine whether Dr. Herbert's duties at the Bronx V.A. included writing health-related reports. An affirmative finding might bar plaintiff from suing the government for copyright violation even if he was permitted to copyright such reports in his own name. The court is left with an unsupported allegation and a misdirected response to guide it in determining whether Dr. Herbert prepared the 10th RDA as part of his official functions with Bronx V.A. This state of affairs does not permit the court to resolve the issue.

Defendant also failed to present facts dispositive of whether plaintiff used government time, materials, or facilities in preparing the 10th RDA. Defendant claimed that Dr. Herbert: (1) attended committee meetings without taking annual leave from the Bronx V.A., (2) was reimbursed travel expenses for attending such meetings, (3) used his government office and supplies for preparing the 10th RDA, and (4) used government penalty mail envelopes for correspondence related to the 10th RDA. In a signed affidavit Dr.

---

**2.** Defendant cited its Proposed Finding of Fact Number 2, which in turn cited pages 95–102 of the attached appendix. Pages 95–102 of the appendix included proficiency reports for Dr. Her- bert during his employment with the Bronx V.A. Those reports do not contain the passage that defendant quoted in its brief, either in form or substance.

Herbert disputed two of these allegations. First, he stated that the committee meetings were in addition to working at least 80 hours biweekly for the Bronx V.A., the minimum time required for his job. Second, he disputed the use of his government office and supplies:

My laboratory, which is physically located at the Bronx V.A. Medical Center, is a joint Mount Sinai—V.A. laboratory. Most of the equipment in it belongs to Mount Sinai or to me personally. My secretary is not and has never been a Bronx V.A. employee. The equipment used by my secretary, including typewriters, word processor, copier, and fax machine, were purchased by and are owned by me. I purchase my own stationery. The telephone listed on my letterhead ... is my own and not the V.A.'s. None of my research personnel were or are V.A. employees—they are all employees of either Mount Sinai or me personally.

In addition, defendant's assertion that HHS reimbursed plaintiff's travel expenses is misleading. The record shows that the Academy paid for plaintiff's travel expenses—HHS paid for such expenses only to the extent that it paid the Academy the contract price for the 10th RDA. Accordingly, the only undisputed fact on which defendant relied is that Dr. Herbert used government penalty envelopes. This fact alone is too thin a strand on which to hang defendant's motion.

## II. The "Rights in Data" Clause

■ The contract between the Academy and HHS incorporated by reference a clause granting the government a royalty-free, non-exclusive license to any copyrights produced under the contract. The clause stated in pertinent part:

with respect to any subject data which may be copyrighted the Contractor agrees to and does hereby grant to the Government a royalty-free, nonexclusive, and irrevocable license throughout the world to use, duplicate or dispose of such data in any manner and for any purpose whatsoever, and to have or permit others to do so: *Provided however*, that such license shall be only to the extent that the Contractor now has, or prior to completion or final

settlement of this contract may acquire, the right to grant such license without becoming liable to pay compensation to others solely because of such grant.

41 CFR § 3–16.950–315A (1979). Defendant contended that this clause encompassed plaintiff, thereby granting defendant a non-exclusive royalty-free license to plaintiff's copyright to the 10th RDA. In support of its position defendant cited a patent case interpreting a very similar clause. *See Technitrol, Inc. v. United States,* 440 F.2d 1362 (Ct.Cl.1971). In response, plaintiff argued that the "Rights in Data" clause (1) is invalid because it conflicts with 17 U.S.C. § 201(e), and (2) applies only to internal HHS document management. Both of plaintiff's arguments are misguided.

■ Plaintiff's first argument is based on the mistaken assumption that the "Rights in Data" clause runs afoul of section 201(e) by conferring on the government copyrights to plaintiff's works. Section 201(e) states:

Involuntary Transfer.—When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title except as provided under Title 11.

17 U.S.C. § 201(e). As can be seen, Section 201(e) applies only to involuntary transfers. The "Rights in Data" clause is a provision in a contract that the Academy entered into voluntarily. Thus, there is no conflict.

Plaintiff's second argument mischaracterizes the "Rights in Data" clause. Plaintiff argued that the clause is a regulation limited by the statutory authority under which HHS promulgated it. According to plaintiff, that authority empowers HHS to regulate only internal HHS document management. The fallacy of this argument is that the "Rights in Data" clause as applied to this case is a contractual provision, not a regulation. The

court is not aware of any obstacle preventing HHS from executing such provisions.

Inexplicably, plaintiff touched on but failed to analyze properly the issue at the core of defendant's argument. The "Rights in Data" clause by its own terms is limited by the contractor's ability "to grant such license without becoming liable to pay compensation to others solely because of such grant." The clause therefore applies to plaintiff only if the Academy had rights to plaintiff's contributions to the 10th RDA, either as owner of the copyright or by way of a license to it.

The Copyright Act of 1976, 17 U.S.C. §§ 101–810 (1988), provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). As a general rule, the author is the person or persons who creates the work. 17 U.S.C. § 102. The Copyright Act carves out an important exception, however, for "works made for hire." If the work is for hire, "the employer or other person for whom the work was prepared is considered the author...." 17 U.S.C. § 201(b). In this case the threshold question, therefore, is whether Dr. Herbert could be considered an employee of the Academy for the purposes of the Act.

In general, courts should look to the hiring party's right to control the manner and means by which the product is accomplished when determining whether a hired party is an employee. *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166, 2178, 104 L.Ed.2d 811 (1989). Factors relevant to the inquiry are:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* Because the parties did not specifically address these factors, a determination as to the nature of plaintiff's relationship with the Academy would be premature at this time.

Likewise, a determination of whether Dr. Herbert granted the Academy an implied license to publish the 10th RDA would be premature at this stage of the litigation. An implied license is one derived from the conduct of the parties. 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 10.03[A], at 10–38 (1994). The existence and scope of an implied license thus necessarily depends of the facts of each individual case. *See e.g., MacLean Assocs. v. WM. M. Mercer–Meidinger–Hansen, Inc.* 952 F.2d 769 (3d Cir.1991); *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555 (9th Cir.1990), *cert. denied,* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). Courts have found such licenses in cases where the plaintiff voluntarily submitted the work to the defendant for publication, *id.,* and in patent cases where the work was created under a contract containing a licensing clause, similar to the "Rights in Data" clause. *Technical Dev. Corp. v. United States,* 597 F.2d 733 (Ct.Cl. 1979). In this case it is plausible that plaintiff granted the Academy an implied license to the 10th RDA. However, an inquiry into the existence and scope of such a license is inherently fact-intensive. Accordingly, the court's resolution of this issue awaits a more complete recitation of the facts at trial.

Contrary to defendant's assertion, this case is not analogous to *Technitrol, Inc. v. United States,* 440 F.2d 1362 (Ct.Cl.1971). Although that case turned on the applicability of a contract clause very similar to the "Rights in Data" clause, there was no question that the plaintiff in that case was an employee of the contractor to whom the clause applied.[3] In *Technitrol* the court ad-

---

**3.** Although the "work for hire" doctrine embodied in 17 U.S.C. § 201(b) does not apply to patents, and there is no analogous statutory provision that applies to patents, the court in *Technitrol* operated under the implied assumption that any patent comprised during the plaintiff's employment with the contractor would belong to the contractor. The basis for the court's assumption is unknown, but it might have arisen from an employment agreement or through common law doctrines.

dressed two other issues: whether the patent's initial conception occurred during the plaintiff's employment, and whether the conception occurred in performance of the contract. *Technitrol,* 440 F.2d at 1368: In this case, the outcome turns on whether Dr. Herbert should be considered an employee of the Academy, or even the United States, during the course of production of the 10th RDA.

### III. Defendant's Implied License

■ Defendant argued that even if the "Rights in Data" clause conferred no license, defendant would have an implied license. However, as before, summary judgment on an implied license theory is not appropriate because the factual allegations underlying plaintiff's theory are in dispute. Defendant based this implied license theory on the government's alleged payment of plaintiff's travel expenses and plaintiff's use of government resources while performing work on the 10th RDA. As stated above, the Academy, not the government, paid plaintiff's travel expenses, and plaintiff's use of government resources is in dispute. Accordingly, the court can not grant summary judgment based on this theory. *See* RCFC 56(c).

### IV. Joint Ownership

■ Defendant alleged that it attained rights to the 10th RDA via joint owners of its copyrights. Specifically, defendant averred that each committee member jointly owned the copyrights to the 10th RDA, that one joint owner granted a non-exclusive license to defendant, and that another transferred his copyright interest to defendant. Plaintiff challenged the existence of joint ownership and argued that, in any case, the subsequent license and transfer by the alleged joint owners occurred in October 1993, four years after the Academy published the 10th RDA—so that even if the court finds that Dr. Herbert effectively transferred his copyrights to the committee, it must find that plaintiff is entitled to damages for infringement incurred prior to October 1993.

At the outset the court notes that plaintiff is correct that any transfer or license executed by a joint owner occurred in October 1993. However, the court refrains from making a determination about the existence of joint ownership. At issue are individual letters of transfer by authors of the 10th RDA. The letters of transfer contain identical language and state in pertinent part:

> The undersigned hereby transfers to the "1980–1985 Tenth Committee on Dietary Allowances" (Henry Kamin, Chairman) ownership of his/her copyright to material as it existed on November 5, 1985 and all prior drafts thereof, contributed by the undersigned for inclusion in the book which was expected to be entitled *Recommended Dietary Allowances, Tenth Edition.*

> This transfer is in exchange for appropriate credit on the final publication of the book by the Academy as preferred publisher or another publisher if the Academy refuses to negotiate.

Defendant alleged that these letters created a enforceable agreement between the committee members and the committee through which each committee member was made a joint owner of the copyrights. Plaintiff responded that the letters created a conditional assignment with a condition precedent; i.e., the signatory's transfer would take effect only after he received appropriate credit on the final publication. Since the condition precedent was never met, under plaintiff's theory, there was never any assignment.

At this stage in the litigation the court is not in a position to agree with either party, because the plain words of the letters do not evidence a contract and are riddled with ambiguity. By its nature a contract is executory; it is a promise by each party to perform some future action. JOHN D. CALAMARI & JOSEPH M. PERILLO, CONTRACTS § 1–2, at 4 (3rd ed. 1987). In this case, the letters do not create such a mutual obligation. They merely evidence a transfer of title. Following the execution of the letter, the signatory is obliged to perform no future action. Accordingly, it may well be that no contract existed between the committee and its members. However, the plain words of the letters also do not unambiguously evidence a conditional transfer; they evidence a transfer in exchange for a promise. Also, the letters do not clearly identify the recipient of the

rights allegedly assigned. The letters state that the assignor transfers his rights to the "committee." These words do not necessarily create joint ownership amongst the individual committee members. An equally plausible understanding of the words is that they transfer copyrights to the committee as a separate entity and that no individual member has the power to exercise the rights so transferred.

Hence, the court is left with language that on its face has no clear meaning. Faced with such a situation, the court must look to evidence outside the four corners of the document to ascertain the intent of the parties. Because the parties clearly disagree on their intent, the court cannot make a determination as to the meaning of the transfer letters at this time. Summary judgment is appropriate only when there is no genuine issue of material fact. RCFC 56(c). The parties' intentions are clearly issues of fact material to the outcome of this case.

## CONCLUSION

Defendant has not met its burden of establishing that it is entitled to judgment as a matter of law. Accordingly, the court denies defendant's motion for summary judgment. Pursuant to RCFC 41(a), the court grants plaintiff's motion for voluntary dismissal of Counts IV, V, and VI. In accordance with the parties' mutual assent, the court dismisses these counts *with prejudice.*

The court is constrained to point out that a great deal of the confusion surrounding the issues of this case are the result of actions of both counsel. At one point plaintiff's counsel stated to the court that plaintiff did not "feel comfortable" suing the United States and in reality did not want damages but recognition of his copyrights vis-a-vis third parties. The court suggested that if defendant were willing to do so, the issues could be laid to rest without the need for litigation. The parties agreed to explore the possibility of such resolution of the case and report back to the court. What ensued was a fiasco. Counsel for defendant told counsel for plaintiff to take the matter up with the Academy notwithstanding his client was the United States and the Academy was not a party to the suit. Counsel for plaintiff leapt at the opportunity and offered to settle its claim against the United States in return for payment by the Academy of five million dollars. The parties and their counsel are hereby forewarned that the court will tolerate no further action of this nature. Statements to the court shall be complete and thoughtful, and orders by the court shall be followed faithfully and quickly. Otherwise, the court shall consider imposition of sanctions.

IT IS SO ORDERED.