CHEVRON U.S.A., INC. et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 350–87L, 352–87L, 353–87L, 384–87L, 391–87L, 409–87L, 554–87L and 679–87L.

United States Claims Court.

July 24, 1989.

interpreting timely filed but unclear appeal notices as timely filed quasi-appeals.

Thomas J. Eastment, Washington, D.C., M. Taylor Darden, J. Berry St. John, Jr., New Orleans, La., Ernest J. Altgelt, III, Houston, Tex., David A. Waskowiak, New Orleans, La., for plaintiffs.

Margaret M. Sweeney, Washington, D.C., for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This consolidated action is before the court on parties' cross-motions for summary judgment. Plaintiffs, separate oil companies, sought a refund of excess royalties paid to the United States on the sale of natural gas extracted from federal lands on the outer continental shelf (OCS), pursuant

to the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331–1356 (1982). The pivotal issue in this case is which of two contradictory interpretations of 43 U.S.C. § 1339(a) (1982) applies to plaintiffs cause of action. The statute allows the refund of excess royalty payments if the payor makes a timely refund request to the Secretary of Interior. In a final decision of the Department of Interior Board of Land Appeals (IBLA), defendant refused to refund plaintiffs' royalties based upon plaintiffs' alleged failure to make a timely request. The court is asked to review that finding, to interpret 43 U.S.C. § 1339, and to determine when the two year period for making a timely refund request began to run.

## FACTS

Plaintiffs are oil and gas companies holding leases on federal land located on the OCS. Under the OCSLA, the Mineral Management Service (MMS) has the responsibility of collecting royalties from lessees of OCS lands based on the amount of oil and gas extracted. The Federal Energy Regulatory Commission (FERC) administers the price setting procedures for the eventual sale of the oil and gas. Through November 1978, plaintiffs paid royalties to defendant on monies received from the sale of gas extracted from their OCS leases based on a calculation known as the "wet rule." Under the "wet rule," the maximum prices for natural gas were set according to energy measurements in British thermal units (Btu) based on the assumption that the gas was saturated with water. The energy content reflected by saturated gas was lower than the actual energy content, resulting in a lower selling price per unit than would be otherwise.

On July 16, 1980 and April 24, 1981, FERC issued Orders No. 93 and 93–A, respectively, instituting what was known as the "dry rule." Under this rule, FERC required that maximum prices for natural gas be set according to Btu measurements based on the actual energy content of the gas delivered to purchasers. Unlike the "wet rule," the "dry rule" reflected the energy content of unsaturated gas, which

resulted in a measurably higher energy content per unit. Consequently, the maximum sales price for natural gas increased. FERC also required the retroactive application of the "dry rule" to December 1, 1978. Purchasers of plaintiffs' natural gas were thus required to pay higher gas prices and to make retroactive payments to plaintiffs. Plaintiffs, in turn, were required to make retroactive royalty payments to MMS on the additional monies received.

Purchasers of plaintiffs' natural gas challenged Orders No. 93 and No. 93–A in the United States Court of Appeals for the District of Columbia on June 19, 1981. On Aug. 9, 1983, the D.C. Circuit vacated the FERC Orders and ordered reinstatement of the "wet rule." *Interstate Natural Gas Assoc. v. FERC*, 716 F.2d 1 (D.C.Cir.1983), *cert. denied sub nom., Exxon Corp. v. Interstate Natural Gas Assoc.*, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 144 (1984) [hereinafter *INGAA* ]. The Supreme Court denied certiorari on March 19, 1984. Based on the *INGAA* decision, FERC promulgated interim regulations and Final Orders (Nos. 399, 399–A, 399–B) requiring the recalculation of natural gas prices using the "wet rule" retroactive to December 1, 1978. The regulations also required plaintiffs to refund the excess payments made by purchasers under the "dry rule." Plaintiffs returned the monies to the purchasers, then requested refunds from defendant on the excess royalties paid by plaintiffs. On November 30, 1984, the MMS denied plaintiffs' refund requests based on its reading of 43 U.S.C. § 1339(a). Upon denial of their requests for refund, plaintiffs appealed the MMS decision to the IBLA. The IBLA issued its final decision on March 17, 1987, affirming the MMS interpretation of 43 U.S.C. § 1339(a). Plaintiffs then filed a claim in this court seeking review of the IBLA decision. Defendant responded with a motion for summary judgment, to which plaintiffs cross-moved on the specific issue of liability.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact

in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). A genuine issue of material fact is present if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit, and its materiality is determined by the substantive law applicable to the case. *Id.* The court finds, and the parties agree, that there are no material facts in dispute and that this case is ripe for disposition by way of summary judgment.

The character of this case is one of a review of a final agency decision. The court notes that its jurisdiction in this case is proper and that plaintiffs have exhausted their administrative remedies. In reviewing the IBLA decision, the court may "set aside agency decisions found to be illegal because they are arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, not in substantial compliance with procedural requirements, or otherwise contrary to law." *Foote Mineral Co. v. United States,* 228 Ct.Cl. 230, 234, 654 F.2d 81, 85 (1981). The court need not agree with the agency's decision, but must determine whether the decision was based on relevant factors, whether the decision lacked a rational basis, or whether the decision represented a clear error of judgment. *Bowman Transp. Inc. v. Arkansas–Best Freight Sys.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); *Rogers v. United States,* 14 Cl.Ct. 39, 46 (1987).

In dispute is the proper interpretation of 43 U.S.C. § 1339, which gives the Secretary of Interior authority to refund excessive payments made to the United States under OCS leases. A refund is required if the OCS lessee "files a request for repayment of such excess ... within two years after the making of the payment...." 43 U.S.C. § 1339(a). Plaintiffs read this language as constituting a two year statute of limitations which would begin to run only after a refund payment became excessive. Plaintiffs argued that they made royalty payments as required by law under the "dry rule," and that it was not until the "dry rule" was vacated by the D.C. Circuit and certiorari denied by the Supreme Court that their refund payments became excessive. Defendant, on the other hand, did not characterize section 1339 as a statute of limitations, but simply argued that plaintiffs had two years from the original payment of royalties to file for a refund, based upon the "clear wording" of the statute.[1] Since plaintiffs failed to file requests for repayment within the requisite two year period from the dates they made actual payments to MMS, defendant argued, plaintiffs were barred from asserting any right to a refund.

It is academic that statutes are to be construed to give effect to the statutory language of the whole. The Supreme Court has repeatedly observed that it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Mountain States Tel. & Tel. Co. v. Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985). The parties dispute the interpretation of the phrase, "such excess shall be repaid ... if a request for repayment ... is filed within two years after the making of the payment...." 43 U.S.C. § 1339. When read by itself, out of context, the language would appear to support defendant's interpretation. The court, however, must look to the entire statute to give proper meaning to the phrase. 43 U.S.C. § 1339 states:

(a) Subject to the provisions of subsection (b) of this section, when it appears to the satisfaction of the Secretary that any

---

1. Defendant argued that the "payments" language should be characterized as a right to a refund or a right to proceed with a cause of action, not a statute of limitations, thus warranting deference to the agency's interpretation of the statute. The court sees no difference between a right to a refund and a statute of limitations. Indeed, defendant conceded this point in its briefs, but re-opened the issue at oral argument. The court in *Shell Offshore, Inc. v. FERC,* 858 F.2d 1147 (5th Cir.1988), a case upon which defendant placed great weight, specifically found that section 1339 was a statute of limitations, contrary to defendant's assertion. *Id.* at 1151. The court concurs, and treats section 1339 accordingly.

person has made a payment to the United States in connection with any lease under this subchapter in excess of the amount he was lawfully required to pay, such excess shall be repaid without interest to such person or his legal representative, if a request for repayment of such excess is filed with the Secretary within two years after the making of the payment.... The Secretary shall certify the amounts of all such repayments to the Secretary of the Treasury, who is authorized and directed to make such repayments out of any moneys in the special account established under section 1338 of this title and to issue his warrant in settlement thereof.

(b) No refund or credit for such excess payment shall be made until after the expiration of thirty days from the date upon which a report giving the name of the person to whom the refund or credit is to be made, the amount of such refund or credit, and a summary of the facts upon which the determination of the Secretary was made is submitted to the President of the Senate and the Speaker of the House of Representatives for the transmittal to the appropriate legislative committee of each body respectively....

When read as the conclusion of a sentence which refers three times to "excess" payments, the statement that a refund must be requested "within two years after the making of the payment" clearly refers to the making of an "excess" payment. Every mention of "payment" in the statute is made in reference to "excess payment." No disjunctive exists which would serve to suggest that Congress intended to attach an alternate, opposite or contrasting meaning to its use of the word "payment." In addition, subsection (b) begins with the phrase, "[n]o refund or credit for such excess payment shall be made ..." with further references to reports of such refunds to be made to Congress. It is apparent that the single mention of the word "payment" in subsection (a) refers to an "excessive payment." When interpreting statutes, the court is "obligated to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330,

339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) (citing *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955)). Viewing section 1339 as a whole, the court thus finds that the two year period in which to file a refund request began to run when the lessee made an excess payment. Such a construction gives effect to the entire statute and preserves the substance of the language embedded in its overall form.

It is without question that the court's construction of section 1339 stands in direct conflict with the IBLA interpretation. The IBLA asserted that "[t]here is no ambiguity in the wording of the statute; the terms of the Act [43 U.S.C. § 1339] cannot be varied simply because the appellants [plaintiffs] may for other reasons appear to deserve refunds." *Shell Offshore, Inc.*, 96 I.B.L.A. 149, 165 (1987). The court agrees; the statute is not ambiguous and the terms may not be varied to accommodate the needs of a party. The court does not seek to change the terms of section 1339, it seeks only to interpret the section in the manner Congress reasonably intended. The two year period did not begin to run until a payment became excessive. This reading is not only consistent with statutory construction, but also the legislative history, to which the court now turns.

Section 1339 of the OCSLA was based upon the limitations period of a 1919 onshore lands leasing statute, which was considered to be an "accrual" type of statute, *i.e.*, the limitations period did not begin to run until after the right had accrued. *See Hearings Before the Committee on Interior and Insular Affairs, United States Senate*, 83rd Cong., 1st Sess., 638–39 (1953). "It would require language so clear as to leave room for no other reasonable construction in order to induce the belief that Congress intended a statute of limitations to begin to run before the right barred by it has accrued." *United States v. Wurts*, 303 U.S. 414, 418, 58 S.Ct. 637, 639, 82 L.Ed. 932 (1938). The legislative history of section 1339 states simply:

Section 10 [43 U.S.C. § 1339] provides that where a lessee has made payments

to the Federal Government in excess of those required, repayment may be made to him. The Interior Committees of the Senate and House of Representatives will have a period of 30 days in which to examine proposed refunds before they are made.

*S.Rep. No. 411*, 83rd Cong. 1st Sess. 14 (1953), U.S.Code Cong. & Admin.News 1953, p. 2177. The legislative history intimates that repayments be made on payments "in excess of those required." Nowhere in the legislative history did Congress even hint that the statute should be changed from an accrual statute to a bar to claims that had yet to come into existence —defendant's position. *Wurts*, 303 U.S. at 418, 58 S.Ct. at 639. The legislative history supports the court's reading of section 1339.

■■■ Defendant argued that the court must give deference to the agency's construction of section 1339. Defendant correctly asserted that the statutory interpretation of an agency charged with the duty to administer the statute is usually given deference. *Beneficial Corp. v. United States*, 814 F.2d 1570 (Fed.Cir.1987). The United States Court of Appeals for the Federal Circuit stated, "[w]e are not unmindful that, in matters of statutory interpretation, the construction adopted by an agency charged with the duty to administer that statute ... is usually given deference." *Beneficial*, 814 F.2d at 1574 (citations omitted). The court continued:

> Giving deference, however, does not entirely dispense with meaningful review.... As stated in *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986), if the agency interpretation "contravenes clearly discernible legislative intent" or is otherwise unreasonable, it should not stand.

*Beneficial*, 814 F.2d at 1574 (citations omitted). When the legislative history reveals the clear intent of Congress, the judiciary and the agency must give effect to the unambiguously expressed intent of Congress. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). If, however, the court determines that Congress has not directly addressed the precise question at issue, the question for the court is whether the agency's answer is unreasonable or based on a permissible construction. *Id.* Assuming, *arguendo*, that the statutory construction and legislative history of section 1339 is unclear, the court now turns to the reasonableness of defendant's interpretation to determine whether any deference should be given to the agency in this instance.

Defendant would have the two year statute of limitations of section 1339 begin to run from the time an initial royalty payment was made, whether or not it was excessive. Statutes of limitation have the purpose of barring stale claims; they do not serve to preclude claims that have not yet come into existence. Defendant's position would allow the statute of limitations to run and expire before any cause of action had accrued. Such a result is unreasonable and without judicial support. This court has repeatedly held that statutes of limitation begin to run only when a cause of action accrues. *American Tel. & Tel. Co. v. United States*, 231 Ct.Cl. 360, 368, 685 F.2d 1361, 1364 (1982). *Montana Bank of Circle v. United States*, 7 Cl.Ct. 601, 609 (1985). Nothing in the legislative history of section 1339(a) would lead one to conclude otherwise. Should defendant's motion be granted and the IBLA interpretation allowed to stand, each time a lessee made a royalty payment, it would necessarily have to file an immediate request for refund to protect its interests should the royalty payment later be declared excessive. Many of these requests would, at the time of filing, be unwarranted. This, however, would be the only method to insure the refund of an excess royalty payment. It requires little prescience to see that such a process would lead to an excessive burden for both lessees extracting oil and gas on federal lands and the governmental agencies overseeing those leases and refund request filings. This would be especially true when royalty payments are made on a monthly basis, as here. Such confusion and uncertainty could not have been the intent of Congress. Consequent-

ly, the court gives no deference to the agency construction of section 1339 because it is unreasonable and thus "should not stand." *Beneficial*, 814 F.2d at 1574.

 Defendant also argued that when statutory interpretation is dependent upon the expertise of the agency with the duty of administering the statute, deference should be given to the agency's construction. The court agrees in principle. The interpretation of the portion of section 1339 at issue, however, is not dependent on the agency's expertise. While the court does not dispute defendant's administrative duties in overseeing refunds and credits under the OCSLA, the statutory construction at issue deals with a statute of limitations. The resolution of such an issue does not depend on agency expertise; it is a question of law which this court may interpret without giving deference to the agency. *See Union of Concerned Scientists v. NRC*, 824 F.2d 108, 113 (D.C.Cir.1987); *Pennzoil Co. v. FERC*, 789 F.2d 1128, 1135 (5th Cir.1986). No deference need be given the agency in this instance.

 In support of its position, defendant placed great weight on the Fifth Circuit opinion in *Shell Offshore, Inc. v. FERC*, 858 F.2d 1147 (5th Cir.1988). Defendant directed the court to the following language from that case:

> Petitioners [plaintiffs] certainly should have known that the dry rule, which was highly controversial from its inception, had a high probability of being reversed, thus mandating repayments of overcharges.... The petitioners were also clearly aware of the requirements to file a request for repayment of royalty payments to MMS within two years of the date of payment under the plain terms of § 10(a) of OCSLA. On top of that, the Solicitor of the Department of Interior issued an opinion in 1981 addressing the very type of situation faced by petitioners: that is, how producers could protect their interests by filing notice with MMS.

*Shell*, 858 F.2d at 1152. While the *Shell* court did address related issues dealing with the same parties, the court expressly noted:

> Presently pending before the United States Court of Claims [sic] is the issue of whether the two year period begins to run at the time of payment to the MMS or at the time it was adjudicated in *INGAA–I* that overpayments were made.

*Id.* at 1151 n. 4. It is the court's present determination, after analyzing the language of 43 U.S.C. § 1339, looking at the legislative history, and reviewing the reasonableness of defendant's interpretation, that the two year statute of limitations of section 1339 began, at the earliest, after the adjudication of *INGAA*.[2]

## CONCLUSION

The court thus finds that defendant failed to show that it is entitled to judgment as a matter of law. Neither the IBLA decision nor defendant's memoranda exhibit any substantial evidence which would convince the court that their interpretation of section 1339 is permissible. In sum, after hearing oral argument, considering the parties' briefs, exhibits and the administrative record, the court finds defendant's construction of section 1339 unreasonable, and that the IBLA's decision lacked a rational basis. The court therefore grants plaintiffs' motion for partial summary judgment and similarly dismisses defendant's motion. Pursuant to RUSCC 42(c), the court finds for plaintiffs on the issue of liability and orders the parties to determine quantum within 30 days of this Order.

IT IS SO ORDERED.

---

**2.** Plaintiffs filed their refund requests within two years of both the District Court decisions and the Supreme Court's denial of certiorari, and thus the court need not make the choice between the two in deciding when plaintiffs' rights actually accrued.