923 F.2d 830
 CHEVRON U.S.A., INC., Pennzoil Co., Pogo Producing Co.,
Phillips Petroleum Co., Shell Offshore, Inc., Mobil Oil
Corp., Mobil Oil Exploration & Producing Texas & New Mexico,
Inc., Mobil Exploration & Producing North America Inc.,
Exxon Company, U.S.A., a Division of Exxon Corporation,
Amoco Production Company and Columbia Gas Development
Corporation, Conoco, Inc., Plaintiffs-Appellees,
v.
The UNITED STATES, Defendant-Appellant.
 Nos. 90-5053, 90-5151.
 United States Court of Appeals,
Federal Circuit.
 Jan. 16, 1991.
Rehearing Denied April 4, 1991.
 
 Thomas J. Eastment, Baker & Botts, Washington, D.C., argued for plaintiffs-appellees. With him on the brief were Michael E. Coney, Shell Offshore, Inc., J. Berry St. John, Jr. and George J. Domas, Liskow & Lewis, Marshall Taylor Darden, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., and Ernest J. Altgelt, III, Conoco, Inc., Houston, Tex. Of counsel was Drew J. Fossum, Baker & Botts, Washington, D.C.
 Elizabeth Ann Peterson, Dept. of Justice, Washington, D.C., argued for defendant-appellant. With her on the brief were Richard B. Stewart, Asst. Atty. Gen., George W. Van Cleve, Acting Asst. Atty. Gen., Margaret M. Sweeney, and John A. Bryson. Also on the brief was Howard W. Chalker, Dept. of the Interior, Washington, D.C., of counsel.
 Before NIES, Chief Judge, LOURIE and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 The United States appeals from the judgment of the United States Claims Court, Chevron U.S.A., Inc. v. United States, 17 Cl.Ct. 537 (1989), granting the claims of appellee natural gas producers for refunds of excessive royalties paid on Government leases. The Government asserts that the Claims Court erroneously overturned the final decision of the Department of Interior Board of Land Appeals holding that all of the asserted requests for refunds were untimely under the Outer Continental Shelf Lands Act (43 U.S.C. Secs. 1331-1356 (1982) (OCSLA)). This court reverses and remands.
 
 BACKGROUND
 
 2
 Plaintiffs-appellees are natural gas producers who leased submerged lands on the Outer Continental Shelf. The Minerals Management Service (MMS) of the Department of the Interior leases these lands for offshore oil and gas development. MMS collects royalties on each lease.
 
 
 3
 In 1978, the Natural Gas Policy Act (NGPA) set maximum prices for natural gas. 15 U.S.C. Sec. 3301-3432 (1982). Under the NGPA, the Federal Energy Regulatory Commission (FERC) enforces those ceiling prices. MMS linked lease royalties to the ceiling prices. A change in the prices thus changed the royalty.
 
 
 4
 Before the NGPA, the "wet rule" governed gas measurements and pricing. The "wet rule" assumed that water vapor in the natural gas reduced its energy content. FERC Order No. 93 changed the gas measurement standard to the "dry rule." This new rule measured the energy content of gas without reference to water vapor content. Order No. 93, F.E.R.C. Stats. & Regs. [Regs. Preambles, 1977-81] (CCH) p 30,172 (July 16, 1980); Order No. 93-A, 15 F.E.R.C. (CCH) p 61,075 (April 24, 1981). The ceiling price under the "dry rule" exceeded the "wet rule" ceiling. Appellees therefore paid higher royalties when the "dry rule" was in effect.
 
 
 5
 Several gas purchasers sought judicial review of FERC's order. In 1983, the United States Court of Appeals for the District of Columbia Circuit vacated FERC's order. Interstate Natural Gas Ass'n of Am. v. F.E.R.C., 716 F.2d 1 (D.C.Cir.1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 144 (1984) (INGAA ). The D.C. Circuit determined that FERC lacked authority to abandon the "wet rule." Furthermore, the court ordered FERC to reinstate the "wet rule." This order retroactively reduced prices. Due to the reduction in prices, the lease royalties also fell. Therefore, for the period from late 1978 through 1984 (when the D.C. Circuit's order became final), lessees had overpaid royalties.
 
 
 6
 FERC ordered gas producers to refund to gas pipeline and distribution companies the difference between "wet rule" and "dry rule" prices. The producers then sought reimbursement from MMS for excess royalty payments. The producers in the case at bar filed a refund application within two years of the D.C. Circuit's decision, but not within two years of the payment of royalties to MMS.
 
 
 7
 MMS denied all requests for refunds of payments made prior to November 9, 1981 and filed after November 9, 1983 on the ground of untimeliness under Sec. 1339(a) of the OCSLA. Refund Procedures and Order to Pay Royalties, 49 Fed.Reg. 31779, Aug. 8, 1984 (Refund Procedures). Section 1339(a) requires gas producers to file for refunds "within two years after the making of the payment." 43 U.S.C. Sec. 1339(a). MMS, however, made an exception for those lessees who filed "proper notice with MMS which tolled the 2-year statute." Final Order, on Royalty Refund Requests Resulting from FERC Orders 93/93A, 49 Fed.Reg. 47120, Nov. 30, 1984 (Final Order).
 
 
 8
 The Department of Interior Board of Land Appeals (IBLA) affirmed MMS's decision. The IBLA held that Sec. 1339(a) gives a lessee two years from the payment of royalties to apply for a refund. Shell Offshore, Inc., 96 IBLA 149, 165 (1987). The Claims Court ruled that OCSLA's two-year limitation on refund applications did not begin to run until the D.C. Circuit vacated FERC's "dry rule" order. The Government appeals from the decision of the Claims Court.
 
 DECISION
 
 9
 This court must determine whether the Claims Court correctly interpreted 43 U.S.C. Sec. 1339(a). Specifically, this court must determine when the two-year limitation on refund requests begins to run.
 
 
 10
 The lessees brought their action in the Claims Court under the Tucker Act, 28 U.S.C. Sec. 1491 (Supp.1990). The Tucker Act grants the Claims Court jurisdiction over monetary claims founded on acts of Congress. The Claims Court appropriately took jurisdiction of the refund claim based on the OCSLA. This court reviews de novo the legal conclusions of the Claims Court. Cooper v. United States, 827 F.2d 762, 763 (Fed.Cir.1987); Milmark Servs., Inc. v. United States, 731 F.2d 855, 857 (Fed.Cir.1984); Heisig v. United States, 719 F.2d 1153, 1158 (Fed.Cir.1983).
 
 43 U.S.C. Sec. 1339(a) states:
 
 11
 [W]hen it appears to the satisfaction of the Secretary [of Interior] that any person has made a payment to the United States in connection with any lease under this subchapter in excess of the amount he was lawfully required to pay, such excess shall be repaid without interest to such person or his legal representative, if a request for repayment of such excess is filed with the Secretary within two years after the making of the payment....
 
 
 12
 (Emphasis added.) This language requires lessees to request the refund of any excess payment "within two years after the making of the payment."
 
 
 13
 To qualify for a refund, a lessee must make a timely request. The phrase "within two years after the making of the payment" defines the timeliness of a refund request. By its terms, this phrase requires a request within two years from the time a lessee makes its original royalty payment.
 
 
 14
 The context of this phrase underscores its clear meaning. The statute does not use the phrase "making of the payment" solely to condition a refund upon a timely request. Rather, the phrase--in a slightly different grammatical form--also appears in an introductory clause: "when it appears ... that any person has made a payment to the United States in connection with any lease under this subchapter...." 43 U.S.C. Sec. 1339(a) (emphasis added). Thus, the "payment" phrase defining timely requests refers to the original excessive royalty payment. This context further links the refund request to the original royalty payment.
 
 
 15
 In the case at bar, appellees first requested a refund more than two years after making excessive payments. Therefore, the statute barred any refund. The statute did not authorize the Secretary of Interior (Secretary) to pay, nor appellees to receive, any refund requested past the two-year limit.
 
 
 16
 The statute does not state that a lessee must request a refund "within two years after discovery that a payment was excessive." Nor does the statute state that a lessee must request a refund "within two years after a judicial determination rendering a payment excessive." The statute requires a request "within two years after the making of the payment." By interpreting the OCSLA otherwise, the Claims Court erred.
 
 
 17
 The Claims Court determined that the phrase "making of the payment" refers to the making of an excess payment. Chevron, 17 Cl.Ct. at 541. On this point, the Claims Court interpretation is correct. The Claims Court also reasoned that the payments "became excessive" when the D.C. Circuit invalidated the FERC rule. Id. at 543. On this point, the Claims Court strayed from the statute. The INGAA ruling did not render the royalties excessive, but merely confirmed that fact. Cf. Barenfeld v. United States, 442 F.2d 371, 194 Ct.Cl. 903 (1971). In any event, the Claims Court erred by measuring the two-year limitation from the issuance of the INGAA ruling. The D.C. Circuit's ruling simply does not constitute "the making of [a] payment." Therefore, the Claims Court cannot correctly measure the two-year limit from the time of the D.C. Circuit decision.
 
 
 18
 The Claims Court also reasoned erroneously that enforcing the language of Sec. 1339(a) would cause the "statute of limitations to run and expire before any cause of action had accrued."* Chevron, 17 Cl.Ct. at 542. Under federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred. Kinsey v. United States, 852 F.2d 556, 557 (Fed.Cir.1988) (quoting Oceanic S.S. Co. v. United States, 165 Ct.Cl. 217, 225 (1964)). Under the OCSLA, an overpayment gives rise to a claim. The statute does not condition eligibility for a refund on anything other than a request within two years of an excess payment. Therefore, claims for refunds accrue on the date of the payment. The two-year limitation did not expire before it accrued.
 
 
 19
 Appellees argue nonetheless that they were ignorant of the claim accrual until after the INGAA decision. Ignorance of claim accrual does not automatically toll the running of a statute of limitations. Dincher v. Marlin Firearms Co., 198 F.2d 821, 826 (2d Cir.1952) (quoting Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176, 62 A.2d 771, 773 (1948)). Rather, the statute commences to run when claimants know or should know of their potential claims. Townley v. Norfolk & W. Ry. Co., 887 F.2d 498, 501 (4th Cir.1989). At the time of the royalty overpayments, appellees were aware that gas purchasers would challenge the new "dry rule." Appellees knew or should have known that the prices and royalty payments could be incorrect. The event giving rise to appellees' refund claim was payment of the initial royalty. Again, the two-year limitation did not expire before it accrued.
 
 
 20
 Appellees had a procedural recourse to prevent expiration of the two-year time limit during pendency of the D.C. Circuit litigation. On December 15, 1981, the Department of Interior Solicitor (Solicitor) set forth the required procedures for requesting a refund. Refunds and Credits Under the Outer Continental Shelf Lands Act, 88 I.D. 1090 (1981) (Credits ). To claim a refund, lessees had to file a written request, stating the specific amount sought and the reason why the amount levied was excessive. Credits at 1099. MMS, citing the Solicitor's opinion, promulgated procedures permitting producers to toll the two-year limitation by giving notice to the Secretary of an intent to seek a refund. Final Order, at 47120; Refund Procedures, at 31779. Thus, gas producers had a means to protect their potential refund claims under the statute. The United States Court of Appeals for the Fifth Circuit and the FERC independently determined that the producers could have satisfied Sec. 1339(a)'s two-year bar by simply notifying MMS. See Shell Offshore, Inc. v. F.E.R.C., 858 F.2d 1147, 1153 (5th Cir.1988), reh'g denied (1989).
 
 This court has held:
 
 21
 [I]n matters of statutory interpretation, the construction adopted by an agency charged with the duty to administer the statute ... is usually given deference.
 
 
 22
 Beneficial Corp. & Subsidiaries v. United States, 814 F.2d 1570, 1574 (Fed.Cir.1987). This court has further held that the agency's decision should receive no deference if it is unreasonable or "contravenes clearly discernible legislative intent." American Lamb Co. v. United States, 785 F.2d 994, 1001 (Fed.Cir.1986). The IBLA's opinion was well-reasoned and did not violate the intent of Congress.
 
 
 23
 The statute does not support the Claims Court's decision. Accordingly, we remand this case to the Claims Court with instructions to dismiss, unless the Claims Court determines that appellees met the notice requirements.
 
 
 24
 REVERSED AND REMANDED.
 
 
 
 *
 Technically speaking, Sec. 1339(a) is not a "statute of limitations." The phrase "statute of limitations" conventionally refers to temporal limits on a judicial, rather than an administrative, claim. American Tel. & Tel. Co. v. United States, 685 F.2d 1361, 1364 n. 7 (Fed.Cir.1982)