**AL MUNFORD, INC. d/b/a Munford Construction Company,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–177 C.

United States Court of Federal Claims.

Aug. 15, 1995.

Dean L. Grayson, Washington, DC, with whom was Assistant Director Bryant G. Snee, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This order addresses three outstanding motions before the court: (1) defendant's motion for summary judgment, (2) plaintiff's motion to reset hearing on defendant's motion for summary judgment, and (3) plaintiff's motion to amend, alter, or vacate the court's order dismissing plaintiff's complaint.

The summary judgment motion addressed both plaintiff's complaint and defendant's counterclaims for fraud. However, on May 24, 1995, in open court and on the record, the court dismissed plaintiff's complaint for failure to prosecute, pursuant to RCFC 41(b), after plaintiff failed to appear at a scheduled oral argument. The court later confirmed that dismissal by written order filed on May 31, 1995. Thereafter, plaintiff filed two motions. On June 2, 1995, plaintiff filed a motion requesting that the court reset the date for oral argument, and on June 12, 1995, plaintiff filed a motion to amend, alter, or vacate the order dismissing the case. For the reasons that follow the court denies each of these motions.

Following the court's dismissal, only defendant's counterclaims remain at issue in defendant's motion for summary judgment. As to those claims, the court grants summary judgment in part, and denies it in part.

## FACTS

This case centered around a contract awarded to Munford Construction Company on August 21, 1991, for building and repairing washracks at Fort McClellan, Alabama. Differences arose early in the contract performance period, and months of disagreement followed. During this period, the contracting officer and Munford exchanged a series of letters detailing their grievances; the contracting officer persistently complained about Munford's performance delays, and Munford responded by reciting events it alleged excused the delays. In essence, plaintiff contended that the government add-

Thomas J. Knight, Anniston, AL, with whom was Dennis G. Nichols, for plaintiff.

ed cost and time to the project by failing timely to direct plaintiff on problems caused by adverse soil and weather conditions and by insisting on a particular tank supplier, which delayed materials procurement. The government, on the other hand, cited a number of performance deficiencies, including: failure to commence work on time, failure to make timely progress, failure to provide a Master Progress Schedule, and nonconforming performance.

The government terminated the contract for default on April 17, 1992. Plaintiff asserted that the termination was unjustified and discriminatory and on June 1, 1992, filed suit in Federal District Court for the Northern District of Alabama, Eastern Division, seeking to reinstate the contract and money damages. However, because plaintiff's surety undertook completion of the contract, the issue of reinstatement was rendered moot, and the parties filed a joint motion for dismissal, which the district court granted on September 8, 1992. The joint agreement stipulated that plaintiff would pursue its monetary claims in this court.

As part of its case in the district court, plaintiff subpoenaed the contracting officer, and attached to the subpoena a certified claim for alleged damages arising from termination of the contract. Appended to the claim was an itemized list of plaintiff's "costs incurred." The contracting officer denied this claim on September 11, 1992.

On March 29, 1993, plaintiff filed an action in this court, "appealing" the contracting officer's decision and further alleging that the default termination was racially motivated. In its complaint, plaintiff sought (1) sums allegedly due under the contract and damages caused by the termination; (2) declaratory judgment that defendant breached and wrongfully terminated the contract; (3) reversal of the contracting officer's actions; and (4) other relief the court deemed necessary to provide plaintiff a full remedy. Defendant responded with a motion to dismiss for lack of subject matter jurisdiction, alleging that plaintiff's claim to the contracting officer did not meet the requirements of the CDA. On December 6, 1993, this court denied defendant's motion to dismiss, holding that plaintiff's submissions to the contracting officer satisfied the threshold statutory and regulatory requirements of the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988) (CDA). *Al Munford, Inc. v. United States*, 30 Fed.Cl. 185 (1993).

Subsequently, the parties entered into discovery. In its first set of interrogatories, defendant inquired into plaintiff's claim for monetary relief in this court. Plaintiff's response set forth a detailed list of the damages it sought. The list included: (1) loss of income caused by termination of the contract, (2) loss of income from other jobs resulting from the damage to plaintiff's reputation caused by the default termination, (3) loss of income of future years, (4) reimbursement for work completed, and (5) claims of creditors resulting from the termination. Defendant's subsequent requests for admissions, interrogatories, and requests for production of documents confirmed that these were indeed the damages sought by plaintiff in this court, and that these damages relate both to the contract at issue and *other* contracts to which plaintiff was a party. Defendant also discovered that the damages sought from the contracting officer included amounts previously paid and costs plaintiff had not yet incurred.

On June 24, 1994, defendant filed counterclaims for civil fraud, alleging that plaintiff's claim to the contracting officer was fraudulent under both the False Claims Act, 31 U.S.C. § 3729 (1988) (FCA), and the CDA, 41 U.S.C. § 604 (1988). Specifically, defendant alleged that plaintiff submitted claims that were fictitious, inflated, and duplicative.

On November 16, 1994, defendant filed a motion for summary judgment on plaintiff's claims and defendant's counterclaims. The court scheduled oral argument on the motion for May 24, 1995, at 3:00 p.m. EST. However, when the scheduled time arrived, plaintiff was not present, and the court dismissed plaintiff's complaint for failure to prosecute, pursuant to RCFC 41(b). The court confirmed the dismissal by written order filed May 31, 1995. Plaintiff responded to the court's dismissal with two motions: (1) on June 2, 1995, plaintiff filed a motion requesting the court to reset the date for oral argu-

ment; and (2) on June 12, 1995, plaintiff filed a motion to amend, alter, or vacate the order dismissing the case.

## DISCUSSION

I. Plaintiff's Motion to Reinstate Its Complaint and to Reset Hearing on Defendant's Motion for Summary Judgment.

In two motions filed on June 2, 1995, and June 12, 1995, respectively, plaintiff requested that this court alter, amend, or vacate its order dismissing the case, and reset oral argument on defendant's motion for summary judgment. These motions followed the court's May 24, 1995 dismissal of plaintiff's complaint for failure to prosecute, which the court ordered after plaintiff failed to appear for oral argument. As grounds for its requests, plaintiff stated that it mistakenly believed that oral argument would be over the telephone, and that counsel was in its office and prepared for oral argument at the scheduled time.

█ RCFC 41(b) empowers this court to dismiss any action for plaintiff's failure to prosecute or to comply with an order or the rules of the court. RCFC 41(b); *Link v. Wabash R.R. Co.,* 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Claude E. Atkins Enters., Inc. v. United States,* 899 F.2d 1180, 1185 (Fed.Cir.1990). Plaintiff's failure to appear on May 24, 1995, was a violation of an order of this court. This failure was not plaintiff's first violation of this court's rules.

On June 7, 1993, defendant filed a motion to dismiss, alleging that the court lacked subject matter jurisdiction over plaintiff's complaint. Plaintiff's response to this motion was due on July 8, 1993. By July 30, 1993, however, plaintiff had not responded, and defendant filed a motion to dismiss for failure to prosecute under RCFC 41(b). In an order dated August 5, 1993, the court denied this motion and ordered plaintiff "to read and become familiar with the rules of the court," and respond.

On November 16, 1994, defendant filed a motion for summary judgment. Pursuant to the rules of the court, plaintiff's response to this motion was due on December 9, 1994.

Again, plaintiff did not file a timely response, and again, on December 21, 1994, defendant filed a motion to dismiss for failure to prosecute. Only on January 13, 1995, did plaintiff respond. On that day plaintiff filed a motion for enlargement of time accompanied by a response to defendant's motion. As before, the court excused plaintiff's lateness and allowed plaintiff's response.

Finally, plaintiff's counsel failed to be present at oral argument. Plaintiff alleged that this failure was an excusable mistake. Plaintiff's counsel stated he believed his physical presence in Washington would not be required for oral argument on defendant's motion for summary judgment, because status conferences had been conducted over the phone. As the court noted in its previous order, however, plaintiff's counsel of record was not present in his offices and thus not available to represent his client, even telephonically. Plaintiff's alleged misunderstanding was unreasonable and unbelievable.

█ Plaintiff has repeatedly failed to comply with the court's orders and rules. Consequently, under RCFC 41(b) this court was justified in dismissing plaintiff's action. *Claude E. Atkins Enters.,* 899 F.2d at 1185. Plaintiff has presented no credible evidence in support of its motions. The court therefore denies plaintiff's motion to amend, alter, or vacate the court's dismissal of plaintiff's claims. The court also denies plaintiff's motion to reset oral argument on defendant's motion for summary judgment, because the matter is moot.

II. Defendant's Motion for Summary Judgment

█ Summary judgment is appropriate when "there is no genuine issue as to any material fact [so] that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). A genuine issue of

material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States,* 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds*, 923 F.2d 830 (Fed.Cir.1991). When the moving party has carried its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975).

Defendant moved for summary judgment on its counterclaims asserting civil fraud under both the FCA, 31 U.S.C. § 3729 (1988), and the CDA, 41 U.S.C. § 604 (1988). Defendant asserted that plaintiff committed fraud by claiming: (1) $16,428 for bonding costs previously invoiced by Munford and paid by the Army; (2) $123,476.57 for materials, equipment rental, services, labor, labor burden, and subcontractors previously invoiced by Munford and paid by the Army; (3) $95,000 for anticipated but unrealized legal expenses; and (4) $2,457.89 for additional work, $1,600 of which the Army already had paid pursuant to a negotiated settlement.[1] According to defendant, Munford claimed a total of $237,362.42 for costs previously paid or not yet incurred. For plaintiff's alleged violation of the FCA, defendant requested the costs of bringing the counterclaims, and a $10,000 penalty. In addition, defendant claimed damages for plaintiff's alleged violation of the CDA in the amount of $237,362.46.

It is undisputed that plaintiff claimed amounts the government had already paid and that plaintiff had not yet incurred. In responses to written interrogatories, during depositions, and in requests for admissions, plaintiff admitted that its claim included all of the above costs and that it was not entitled to any of them. However, plaintiff unbeliev-

ably denied that it had any intention of double-billing the government or of claiming amounts to which it was not entitled. According to plaintiff, its claim represented the amount necessary to complete the job had Munford been authorized to do so by the district court.

### A. Plaintiff Knowingly Submitted a False Claim in Violation of the FCA.

■ The FCA holds a party liable "who knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). A claim is deemed false under the FCA if the moving party proves by a preponderance of the evidence that the non-movant acted with knowledge of the false information contained in the claim. 31 U.S.C. § 3731(c) (1988); *see Sterling Millwrights, Inc. v. United States*, 26 Cl.Ct. 49, 96 (1992). Under the FCA, the knowledge requirement is met if the claimant:

(1) has actual knowledge of the [false] information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b). Those held liable under the FCA are subject to "a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ..." 31 U.S.C. § 3729(a).

■ The only issue before the court is whether plaintiff knew that its claims to the contracting officer were false or fraudulent as defined by the FCA. To prove a violation of the FCA, the government need not prove that a party intended to deceive the government. *United States v. TDC Management Corp.*, 24 F.3d 292, 298 (D.C.Cir.1994). As stated above, the FCA requires only that the government prove that a party knowingly submitted a claim with reckless disregard to the falsity of the information. 31 U.S.C. § 3729(b); *TDC Management Corp.*, 24 F.3d

---

1. Originally, plaintiff claimed $2,457.89 for additional work. Subsequently, however, the parties settled this claim for $1,600. Defendant had already paid the agreed upon amount ($1,600) at the time plaintiff submitted a claim for additional work to the contracting officer.

at 298; *Chen–Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir.1992). However, innocent mistake or mere negligence is excused. *Chen–Cheng Wang*, 975 F.2d at 1420. For example, a party could not be held liable under the FCA for making an innocent mathematical error in calculating its claim. *Id.*

■ In defense of its position plaintiff argued that a claimant need not present exact damage figures once the existence of damages is established. Plaintiff's argument relied on *Wilner v. United States*, 23 Cl.Ct. 241, 243 (1991), which involved a contractor's claim for delay damages, where the basis for the contractor's recovery of damages existed, and the dollar value simply was in dispute. In a fraud case the court considers not the mathematical certainty of the claim to which a contractor is entitled, but whether the contractor knows that they are in fact not entitled to what they claim. Plaintiff's reliance on *Wilner* therefore is misguided.

Plaintiff also argued that its claim to the contracting officer was not intended as a claim for which it believed the government was liable. The court is flabbergasted by this disingenuous, self-serving statement. In responding to defendant's motion to dismiss, plaintiff took the opposite position and baldly asserted that its claim was *proper* under the CDA. Plaintiff averred that the certification and statement of the amount of the claim along with the supporting correspondence and the complaint previously delivered to the government and contracting officer constituted a valid claim under the CDA. Based on the spurious information before it at the time, the court agreed, and denied defendant's motion. Having persuaded the court that its submission to the contracting officer was a valid claim under the CDA, plaintiff is estopped from now claiming otherwise. Plaintiff cannot have it both ways. This is not alternative pleading.

■ Plaintiff's submission of a claim for an amount already paid by the government, at the very least, constitutes recklessness with regard to the validity of the claim. Every party filing an action in this court has a duty to examine its records to determine what amounts the government already has

paid. A failure to make this type of minimal examination is nothing more than deliberate ignorance. A party that is deliberately ignorant of a false claim is liable under the FCA. *TDC Management, Corp.*, 24 F.3d at 298. Plaintiff's error was not merely an innocent mistake. To find otherwise would allow any party filing an action in this court to "double-bill" the government and then cloak itself in a shield of feigned ignorance.

Accordingly, the court finds that plaintiff violated the FCA, and awards damages to defendant in the amount of $6,000 *plus* three times the costs to defendant of bringing its counterclaims. Within thirty days of the filing date of this order, defendant shall file with this court an itemized list of the damages that it believes it is entitled to recover, including the basis of recovery for each item.

### B. *Defendant Failed to Prove That Plaintiff's Actions Violated The CDA.*

■ The CDA's fraudulent claim provision holds a contractor liable when it is "unable to support any part of [its] claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor ..." 41 U.S.C. § 604. The CDA defines misrepresentation of fact as "a false statement of substantive fact, or any conduct which leads to a belief of a substantive fact material to proper understanding of the matter at hand, made with intent to deceive or mislead." 41 U.S.C. § 601(7). Contractors who assert a fraudulent claim are "liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of [their] claim." 41 U.S.C. § 604.

■ Defendant argued that plaintiff's inclusion of unrealized attorney's fees and previously paid costs was a *per se* violation of the statute. On the record to date, the court disagrees. To prove a violation of the CDA, the government must show by a preponderance of the evidence that the contractor's misrepresentation was made with the intent to deceive or mislead the government. 41 U.S.C. § 601(7); *see Sterling Millwrights*, 26 Cl.Ct. at 111 (citations omitted). Defendant

provided no direct evidence that plaintiff had such an intent. In fact, plaintiff's subsequent admissions that it made a mistake and that the amounts contained in its claim were no longer valid provided some minimal evidence during the course of the litigation that plaintiff did not actually intend to deceive the government.

Nonetheless, at this stage of the litigation the court makes no decision about plaintiff's intent to deceive the government, and reserves judgment on that issue for future resolution, if needed. The court merely finds that plaintiff's intent is a genuine issue of material fact which prevents the court from granting summary judgment.

### CONCLUSION

The court denies plaintiff's motion to vacate the court's May 24, 1995 order, and plaintiff's motion to reset oral argument. The court grant's in part and denies in part defendant's motion for summary judgment on defendant's counterclaims. The summary judgment motion presented the court with two issues: (1) whether plaintiff knowingly submitted a false claim in violation of the FCA; and (2) whether plaintiff made a material misrepresentation of fact in violation of the CDA. The court grants summary judgment on the first issue but denies it on the second issue. Within thirty days of the filing date of this order, defendant shall file with this court an itemized list of the damages that it believes it is entitled to recover. At that time, defendant shall also inform the court whether it wishes to proceed with its counterclaim in fraud under the CDA. The clerk of the court shall enter judgment against plaintiff in the amount of $6,000 *plus* such damages as the court directs by future order.

**IT IS SO ORDERED.**

