PER CURIAM.
James L. Worthington appeals from a judgment of the United States Court of Federal Claims (“CFC”) granting the Government’s motion for summary judgment on Mr. Worthington’s claim for back pay pursuant to the Federal Employees Flexible and Compressed Work Schedules Act (“CWSA”), 5 U.S.C. §§ 6127 et seq. (2000), and to the Back Pay Act (“BPA”), 5 U.S.C. §§ 5596 et seq. (2000). Worthington v. United States, 41 Fed. Cl. 181 (1998). Because the court correctly determined that the Government was entitled to judgment on the record as a matter of law, we affirm.
BACKGROUND
This claim for back pay has been 14 years in the making and the saga continues. The facts of the case, however, are not in dispute. Mr. Worthington was employed by the United States Forest Service (“agency”) as a Civil Engineering Technician for approximately 15 years. On March 23, 1988, Mr. Worthington was given a letter of instruction reassigning him from a regular to a compressed work tour. Under the new work schedule, instead of working 8 hours a day for a total of 40 hours per week, he worked 80 hours for every two-week period, with the following time distribution: 8 hours every other Monday, 9 hours on all other weekdays, with every other Friday off. In practice, the only difference between the standard and the compressed tour of duty to which Mr. Worthington was assigned was the allocation of time.
On March 24, 1988, Mr. Worthington initiated a verbal complaint challenging the legality of the letter of instruction and, shortly after, on March 28, 1988, he lodged an informal grievance with his Equal Employment Opportunity Counselor. In his grievance, Mr. Worthington alleged that he had been illegally placed under the compressed work tour in violation of the CWSA, 5 U.S.C. § 6127, and requested that the letter of instruction be withdrawn and that he be given backpay for the overtime he was prevented from working. At no time did Mr. Worthington allege or indicate that his salary had been reduced as a result of the placement under the compressed work tour, nor did he provide any evidence of statutory entitlement to overtime pay, which under the facts of this case would be either barred by the provisions of the CWSA or allowed only if previously authorized. See Id.
On May 2, 1988, Mr. Worthington sought relief for having been placed on the compressed tour through a formal discrimination complaint filed with the Department of Agriculture’s Equal Employment Office (“DA EEO”), which, in a decision issued on March 29, 1990, found no evidence of discrimination and denied any request for overtime payment. However, on April 2, concurrent with the issuance of the DA EEO’s decision, the agency rescinded and canceled the letter of instruction and allowed Mr. Worthington to choose his own schedule. Although Mr. Worthington “voluntarily” decided to continue working the compressed work schedule, he persisted in his effort to obtain back pay for the overtime he had allegedly been deprived from working and at the same time had been forced to work be *79 tween March 1988 and March 1990. Thus, on April 27, 1990, Mr. Worthington filed another grievance with the agency, this time with a specific request for back pay allegedly due him for the nine-hour work days and for the Fridays off in which he could have worked overtime. His claim was denied on August 1990. At that time, Mr. Worthington was also removed from the agency after being issued an unsatisfactory performance evaluation and being twice denied a within-grade increase. He appealed both decisions to the Merit System Protection Board (“Board”) and to the Office of Special Counsel (“OSC”).
On June 11, 1991, the Board affirmed the agency’s removal of Mr. Worthington and dismissed for lack of jurisdiction Mr. Worthington’s appeal requesting reimbursement for working a compressed work schedule. The Board’s affirmance of the agency denial of his within grade increase was further appealed to and affirmed by this court on February 10, 1992, in Worthington v. Department of Agriculture, 956 F.2d 1172 (Fed.Cir.1992) (table). Still unsatisfied, Mr. Worthington sought yet another review of the Board’s decision before the EEOC, which once again affirmed the Board in a decision issued on June 8, 1992.
Even in light of the many judicial and administrative decisions already issued against him, Mr. Worthington insisted on seeking review of the agency actions, and, on July 15, 1992, he filed a Title VII civil action[1] in which he challenged his 1990 removal from the agency and his placement on a compressed work tour between March 1988 and April 1990. As part of that action he sought all relief available under 42 U.S.C.2000e-5(g), including, inter alia, any and all back pay that he may have been entitled to. After a trial on the merits, judgment was entered for the agency in September 1994.
Finally, on February 6, 1996, Mr. Worthington filed this action before the CFC, once again seeking overtime compensation for having been wrongfully placed on a compressed work schedule in violation of 5 U.S.C. § 6127. On June 30, 1998, the CFC dismissed the suit for lack of subject matter jurisdiction, and the case was appealed to this court. Addressing only the jurisdictional issue, this court found jurisdiction under the Tucker Act and reversed and remanded to the trial court for an adjudication on the merits. Worthington v. United States, 168 F.3d 24 (Fed.Cir. 1999). In that decision we also noted, in passing, that although Mr. Worthington had pursued several of his claims relating to his employment with the agency before a number of judicial and administrative bodies, the issue of res judicata was not before us. Id. at 27. On remand, the parties filed cross-motions for summary judgment, and on November 5, 2001, the court entered judgment granting the Government’s motion, and denied Mr. Worthington’s motion on the grounds that his claim was barred by res judicata and the statute of limitations, and that it also failed make out a prima facie case under the BPA.
*80 Mr. Worthington timely appealed to this court.
DISCUSSION
We have jurisdiction to review a final decision of the CFC pursuant to 28 U.S.C. § 1295(a)(3) (2000). The court’s grant of summary judgment in favor of the Government is a question of law which this court reviews without deference, applying anew the same standard used by the trial court. Glass v. United States, 258 F.3d 1349, 1353 (Fed.Cir.2001), Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1369 (Fed.Cir.2002). Thus, we will affirm a grant of summary judgment if, after viewing all evidence in the light most favorable to Mr. Worthington, there exist no genuine issue of material fact and the Government is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case, the facts are not in dispute, and the only question on appeal is whether the trial judge erred as a matter of law in granting the Government’s motion. See Armco, Inc. v. Cyclops Corp., 791 F.2d 147, 149 (Fed.Cir.1986).
We address the statute of limitations issue first because it is a threshold jurisdictional question. Seldovia Native Ass’n, Inc. v. United States, 144 F.3d 769, 774 (Fed.Cir.1998). Proper application of the statute of limitations is a legal question which this court reviews de novo. See Chevron U.S.A., Inc. v. United States, 923 F.2d 830, 833 (Fed.Cir.1991). On his first appeal to this court, faced with the single question of subject matter jurisdiction, we found that the CFC had Tucker Act jurisdiction to adjudicate Mr. Worthington’s BPA claim, since that claim was founded on the underlying alleged violation of the CWSA, and reversed and remanded the case to the CFC for an adjudication on the merits. See Worthington v. United States, 168 F.3d 24, 26 (Fed.Cir.1999). We also held, that because an alleged violation of the CWSA was not within the purview of the Civil Service Reform Act, and therefore outside of the jurisdiction of the Board, the CFC had original jurisdiction to adjudicate the dispute. See Id. at 26, 27. Having determined that jurisdiction was proper in the CFC in the prior appeal, on this appeal we must decide whether Mr. Worthington was barred from invoking that jurisdiction for failure to meet the limitations requirement. Ariadne Financial Services Ltd. v. United States, 133 F.3d 874, 878 (Fed.Cir.1998). The relevant statute of limitations provides that “[ejvery claim of which the [CFC] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.” 25 U.S.C. § 2501 (2000) (emphasis added).
Our precedent dictates that a “claim first accrues and the statute of limitations begins to run ... when all events that fix the liability of the government have occurred and entitle the claimant to institute an action.” Hart v. United States, 910 F.2d 815, 817 (Fed.Cir.1990).
On remand, the CFC found that March 23, 1988, was the date which fixed the Government’s liability, that being the date in which the agency gave Mr. Worthington the letter of instruction giving rise to the alleged violation. Worthington, 50 Fed. Cl. at 716. Based on this finding it held that plaintiffs claim, in order to be timely, had to be filed no later than March 23, 1994. Id. Plaintiffs claim, however, was filed on February 6, 1996, almost two years after the limitations period. Id Based on this determination and relying on Oceanic Steamship v. United States, 165 Ct.Cl. 217, 225 (1964), the CFC found that plaintiffs claim for back pay accruing before February 6, 1990, was barred, but *81 that the two months period between February 6, 1990 to April 2, 1990, survived because it was within the limitations period. Id. This computation is presumably predicated on the CFC’s belief that although the Government’s liability was first fixed on March 23, 1988, each pay period during which it failed to grant overtime pay to Mr. Worthington constituted a new and different violation in which plaintiffs claim first accrued and marked a new beginning of the limitations period.
We find the CFC erred as a matter of law in its computation of the limitations period and that its reliance on Oceanic Steamship was misplaced. The CFC stated in its opinion, without citing any authority, that in light of Oceanic Steamship “it is clear by analogy that a claim under the Back Pay Act accrues once an employee is denied “pay, allowances, or differentials” to which he is allegedly entitled”. Worthington v. United States, 50 Fed. Cl. at 716. That case, however, does not support an application by analogy to the facts of this case. In Oceanic Steamship the court held that “where a claim is based upon a contractual obligation of the Government to pay money, the claim first accrues on the date when the payment becomes due and is wrongfully withheld in breach of the contract.” Oceanic Steamship Co. v. United States, 165 Ct.Cl. at 225. Under the facts of that case, the plaintiff already had an entitlement by contract to the moneys the Government improperly withheld, therefore each time the Government failed to pay constituted a new breach of its preexisting duty under the contract giving rise to a new claim. See Id.
In the instant case, however, the facts are tangentially different from those in Oceanic Steamship and its application here is not warranted. Mr. Worthington’s claim for back pay is based upon one single alleged violation, namely the letter of instruction he received on March 23, 1988. In his brief, Mr. Worthington himself points out that there is no “dispute ... that all the requested remedies are directly related to the Letter of Instruction,” and therefore the damages he is claiming from March 1988 to April 1990 all stem from that one single violation.
We agree with Mr. Worthington that the alleged violation occurred at the time Mr. Worthington received the letter of instruction on March 23, 1988. It is the letter which fixed the alleged liability of the Government and that marked the running of the limitations period, because at that time Mr. Worthington could have brought a claim against the Government. This determination is further supported by the fact that already on the day after receiving the letter, Mr. Worthington lodged an informal complaint, and only a few days later he filed another informal complaint alleging that the letter of instruction constituted a violation of the CWSA and immediately at that time Mr. Worthington requested, inter alia, back pay remedy.
Our precedents firmly establish that when a claim for damages is based on one single violation of a statute or regulation, the limitations period starts running at the time the Government’s liability attaches with respect to that violation, and that no claim for back pay pursuant to that violation can be rescued, even if part of the back pay claimed falls within the six years. In Brown Park Estates-Fairfield Development Co. v. United States, 127 F.3d 1449 (1997), this court explained the applicability of the so-called “continuing claim doctrine,” which has often been used in back pay cases to rescue portions of periodic pay claims arising within the six-year limitations period, even though the administrative refusal to pay the sum claimed may have occurred prior to six years. Id. at *82 1455-56. In that case, we stated that “for the continuing claim doctrine to apply, the plaintiffs claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages.” Id. Cases which have applied this doctrine to compensate for overtime pay, were always based on a violation of a preexisting duty to pay the overtime, and therefore each time the periodic installment of back pay allegedly due was denied constituted a new cause of action, which gave rise to a continuing claim. See Id. at 1456. In each of these cases, “the plaintiffs claim could be broken down into independent and distinct wrongs, each having its own associated damages, each constituting an alleged violation of a statute or regulation that accrued when that particular wrong occurred, independent of the accrual of the other wrongs.” Id. at 1457. We also noted, however, that “a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim.” Id. at 1456. We also pointed to a set of cases in which the “alleged wrongs ... such as nonpayment of ... wages, were not independently accruing violations of any statutes or regulations in themselves, but rather were merely damages resulting from the single earlier alleged violation by the government ... that accrued outside the statute of limitations period.” Id. at 1457.
The present case does not involve a series of independent, distinct wrongs. As stated earlier the only violation complained of was the alleged wrongful placement under the compressed work tour, in contravention of the CWSA. It is that action, accomplished through the March 23, 1988, letter of instruction, and the consequential damages resulting from it, which constitute the actionable wrong that Mr. Worthington seeks to vindicate today.
And so it becomes clear, and we conclude, that the evidence before us establishes, as a matter of law, that the statute of limitations began to run at the time Mr. Worthington received the letter of instruction, on March 23, 1998, at which time he was put on inquiry that he had a potential claim against the Government. Because the pending claim was filed almost two years after the limitations period ended, this suit is time barred and the CFC should have not entertained an adjudication on the merits.
Because we find the statute of limitations sufficient to uphold the grant of summary judgment, we need not address the other issues.
For the foregoing reasons, we affirm the CFC’s grant of summary judgment in favor of the Government.
No costs.

. This was only one of four civil suits filed by Mr. Worthington against the agency in the U.S. District Court for the District of Central California (later transferred to the Eastern District). In the first suit, Civ. S. No. 92-1020, Mr. Worthington complained of retaliation by the agency for his having filed EEO complaints alleging discrimination. The second, referenced supra, Civ. S. No. 93-868, was based on his 1990 removal from the agency. In the third suit, Civ. S. No. 93-868, Mr. Worthington challenged his performance evaluations and the duties to which he had been assigned. Finally, in the fourth suit, Civ. S. No. 94-1356, Mr. Worthington challenged his allegedly wrongful 1986 reassignment to a different duty station. The agency prevailed in all suits.